# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL NO. 3:09CV116-RJC-DSC

| | |
|---|---|
| TERESIA C. STREET,<br>      Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security Administration,<br>      Defendant. | )<br>)<br>)<br>)   **MEMORANDUM AND RECOMMENDATION**<br>)<br>)<br>)<br>)<br>) |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Summary Judgment" (document #10) and "Memorandum in Support ..." (document #11-2), both filed July 24, 2009; and Defendant's "Motion for Judgment on the Pleadings" (document #14) and "Memorandum in Support ... (document #15), both filed October 21, 2009. This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be <u>denied</u>; that Defendant's Motion for Judgment on the Pleadings be <u>granted</u>; and that the Commissioner's decision be <u>affirmed</u>.

## I. PROCEDURAL HISTORY

On September 12, 2003, Plaintiff filed an application for a period of disability and Supplemental Security Income ("SSI") alleging she was unable to work as of August 1, 2003 due to "HIV [human immunodeficiency virus]" (Tr. 159). The Commissioner denied this application

initially on January 29, 2004 (Tr. 93), and upon reconsideration on July 13, 2004 (Tr. 94). On October 18, 2005, an Administrative Law Judge issued a decision finding that Plaintiff was not "disabled" (Tr. 95-107). However, the Appeals Council issued an order vacating this decision and remanding the case for further administrative proceedings (Tr. 108-11). Pursuant to this order, on April 16, 2007 a second hearing was held before a different Administrative Law Judge ("the ALJ") (Tr. 31-62).

In a decision dated September 24, 2007, the ALJ denied Plaintiff's claim, finding that the Plaintiff had not engaged in substantial gainful activity since her alleged onset date and that Plaintiff suffered from human immunodeficiency virus (HIV), bronchitis, and adjustment disorder which were severe impairments within the meaning of the regulations, but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ also considered Plaintiff's testimony regarding her impairments' severity and resulting functional limitations, but deemed this testimony not to be entirely credible (Tr. 23). The ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC")[1] to perform unskilled work at the light[2] exertional level with the following limitations:

> she is limited to jobs in a clean work environment with no dust, chemicals or fumes,

---

[1] The Social Security Regulations define "residual functional capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

[2] "Light" work is defined in 20 C.F.R. § 404.1567(b) as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

2

> simple routine repetitive low stress jobs ruling out jobs in assembly lines or work situations with speeds, numbers and noises. Also, [Plaintiff] is limited to work that involve[s] limited interaction - dealing more with persons or things rather than a large number of coworkers or crowds, and limited to unskilled or low semi-skilled concentration in an 8-hour day

(Tr. 21). The ALJ next found that given her functional limitations, Plaintiff was not able to perform her past relevant work.

The ALJ then shifted the burden to Defendant to show the existence of other jobs in the national economy which Plaintiff could have performed. The ALJ took testimony from a Vocational Expert ("V.E.") whose testimony was based on a hypothetical that factored in the above limitations. The V.E. testified that Plaintiff could perform work as a Photocopying Machine Operator (DOT 207.685-014; 620 jobs North Carolina and 25,000 jobs nationally); Ticket Taker (DOT 344.667-010; 1,560 jobs in North Carolina and "several thousand" nationally); or as a Packaging and Filling Machine Operator (DOT 920.685-078; 7,200 in North Carolina and over 500,000 jobs nationally) (Tr. 60). Accordingly, the ALJ concluded that there was substantial evidence that there were a significant number of jobs in the national economy that the Plaintiff could perform and that, therefore, she was not disabled.

By notice dated January 30, 2009, the Appeals Council denied the Plaintiff's request for further administrative review.

The Plaintiff filed the present action on March 23, 2009. On appeal, Plaintiff assigns error to the ALJ's evaluations of her mental functioning and credibility, and his alleged failure to resolve "apparent conflicts" between the V.E.'s testimony and the Dictionary of Occupational Titles ("DOT"). See Plaintiff's "Memorandum in Support ..." (document #11-2). The parties' motions are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at

1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

The question before the ALJ was whether at any time the Plaintiff became "disabled" as that term of art is defined for Social Security purposes.[3] As an initial matter, Plaintiff argues that the ALJ erred in evaluating her mental impairment. To the contrary, the ALJ fully evaluated Plaintiff's mental impairment and incorporated the resulting limitations into his formulation of Plaintiff's RFC. The ALJ determined that Plaintiff's adjustment disorder limited her to simple, routine and repetitive low stress jobs involving limited interaction (i.e.: dealing more with persons or things rather than a large number of coworkers or crowds), and only requiring unskilled or low semi-skilled concentration. Substantial evidence supports these assessed limitations.

The ALJ explained that in a consultative psychological evaluation dated December 2, 2003, Dr. M. Patricia Hogan diagnosed Plaintiff with an adjustment disorder encompassing her mixed anxiety and depressed mood (Tr. 19). At this exam, Plaintiff reported difficulties with depressive symptoms including having memory and concentration problems, anxiety with panic attacks, and low energy (Tr. 227-28). However, she informed Dr. Hogan that she had never sought therapy for

---

[3]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

5

any of these issues. Id. On exam, Plaintiff was oriented and able to follow directions; displayed an appropriate affect, intact remote and recent memory, immediate recall, and concentration; and demonstrated good insight into her situation (Tr. 228-29). Dr. Hogan did note that Plaintiff functioned in the low-average range of intelligence, which resulted in some difficulty with memory, recall, concentration, abstract thinking and judgment (Tr. 229).

Dr. Henry Perkins reviewed these exam findings on January 20, 2004, and assessed Plaintiff's mental RFC (Tr. 271-74). Citing to these findings, he opined that Plaintiff "should be able to perform simple routine repetitive tasks in a low stress non-productive environment (Tr. 273). This mirrors the ALJ's finding that "[Plaintiff] should be able to perform simple routine repetitive tasks in a low stress non-productive environment" (Tr. 24). Although the ALJ gives Dr. Perkins' opinion significant weight, he also affords additional weight to the evidence of record as a whole (Tr. 25). This included "treatment records, psychological and medical reports, and [Plaintiff's] description of her symptoms, including pain, and resulting functional limitations." Id. For example, Plaintiff testified that she has difficulty dealing with crowds of people at the grocery store, and gets angry and defensive when people try to correct to her (Tr. 48). Accordingly, the ALJ's assessment of her RFC includes the need for work involving limited interaction and dealing more with persons or things rather than a large number of coworkers or crowds (Tr. 21). This evidence demonstrates the ALJ's proper consideration of Plaintiff's mental impairment and supports his assessment of her mental RFC.

As Plaintiff argues, a subsequent evaluation – conducted during the administrative remand ordered by the Appeals Council – performed by Dr. Morris Britt on January 29, 2007 did contain more restrictive findings. Dr. Britt noted that at the time Plaintiff was examined she was "plotting

to kill her husband" because he gave her HIV (Tr. 538). Dr. Britt concluded that Plaintiff's ability to perform simple, routine and repetitive tasks was "very poor now due to her agitated depression" (Tr. 541) (emphasis added). Dr. Britt found similarly that Plaintiff's ability to interact with peers and co-workers was "very poor" and her mental functioning generally was "poor" at the time of his examination due to her agitated state. Id.

      Substantial evidence supports the ALJ's essential conclusion that Dr. Britt's opinion reflects an isolated period when Plaintiff's metal limitations were exacerbated. As the ALJ noted, Dr. Britt diagnosed her with a Major Depressive Disorder, single episode, agitated type (Tr. 24, referencing Tr. 541) (emphasis added). The ALJ also noted that Dr. Britt did not have an opportunity to review other consultative exam findings that demonstrated when Plaintiff was not in an exacerbated or agitated state, her level of functional impairment was consistent with her assessed RFC. Id. Further, the ALJ considered that Dr. Britt was also not privy to Plaintiff's testimony that her mental impairments were improved with Zoloft, and only affected her abilities to interact with large groups of people and to take criticism (Tr. 47-49). These are limitations that the ALJ fully accounts for in the assessed RFC (Tr. 21). Compare Tr. 21 (demonstrating that ALJ limits Plaintiff to work involving limited interaction and dealing more with persons or things rather than a large number of coworkers or crowds) with Tr. 48 (Plaintiff's testimony that she has difficulty dealing with crowds of people at the grocery store, and gets angry and defensive when people try to correct to her). It is also significant that Dr. Britt assessed a Global Assessment of Functioning (GAF) score of 55 (Tr. 541). As the ALJ explained, such a score is only "indicative of moderate [that is, nondisabling]

difficulty in social, occupational, or school functioning" (Tr. 24).[4]

Plaintiff also asserts that following a January 23, 2008 appointment, Dr. Hogan found that her condition had worsened. To the contrary, the objective exam findings on this date mirror and arguably show improvement from Dr. Hogan's prior findings. Compare Tr. 733-34 (noting that Plaintiff was oriented; did not appear anxious; displayed intact remote and recent memory, immediate recall, and concentration; and demonstrated appropriate abstract thinking, judgment, and insight) with Tr. 228-29 (noting that Plaintiff was oriented and able to follow directions; displayed an appropriate affect, intact remote and recent memory, immediate recall, and concentration; and demonstrated good insight into her situation). In fact, Dr. Hogan no longer noted any difficulty with with memory, recall, concentration, abstract thinking and judgment. Compare Tr. 734 with Tr. 229. Simply stated, there is nothing in Dr. Hogan's 2008 report that materially conflicts with her prior report from 2003.

In sum, substantial evidence supports the ALJ's evaluation of Plaintiff's mental impairment and his findings regarding her mental RFC. The ALJ properly incorporated limitations into Plaintiff's RFC based on her mental limitations.

The ALJ also properly applied the standard for determining a claimant's Residual Functioning Capacity based on subjective complaints of pain and the record contains substantial evidence to support the ALJ's conclusion that Plaintiff's testimony was not fully credible. The

---

[4] The GAF scale is used for reporting the clinician's judgment of the individual's overall level of functioning and concerns psychological, social and occupational functioning and, unless otherwise noted, refers to the level of functioning at the time of evaluation. See American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 30 (4th ed. 1994) (hereinafter, *DSM-IV*). A GAF score of 51-60 denotes moderate symptoms or difficulty in social, occupational, or school functioning. *DSM-IV* at 34.

determination of whether a person is disabled by non-exertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996), citing 20 C.F.R. § 416.929(b); and § 404.1529(b); 42 U.S.C. § 423(d)(5)(A). If there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [her] ability to work." Id. at 595, citing 20 C.F.R. § 416.929(c)(1); and § 404.1529(c)(1). The regulations provide that this evaluation must take into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Craig, 76 F.3d at 595 (citations omitted).

The record contains evidence of Plaintiff's human immunodeficiency virus (HIV), bronchitis, and adjustment disorder– which could be expected to produce some of the pain claimed by Plaintiff – and thus the ALJ essentially found that Plaintiff could satisfy the first prong of the test articulated in Craig. However, the ALJ also correctly evaluated the "intensity and persistence of [her] pain, and the extent to which it affects [her] ability to work," and found Plaintiff's subjective description of her limitations not to be fully credible.

The ALJ considered Plaintiff's testimony regarding her functional limitations (Tr. 23). Specifically, he noted that Plaintiff testified that "she can walk a few feet before getting tired. She

9

also stated that she can stand for about 10 to 12 minutes and can only lift about 5 to 6 pounds" (Tr. 23, referencing Tr. 40-42). The ALJ explained that there was no objective evidence to support these statements regarding the level of her functional limitations (Tr. 23), a permissible rationale because allegations of pain "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." Mickles v. Shalala, 29 F.3d 918, 927 (4th Cir. 1994).

However, the ALJ did not simply rely on the lack of objective evidence when finding Plaintiff's statements about her physical restrictions not to be credible. Rather, he cited to Plaintiff's own conflicting statements (Tr. 23), pointing out that in an Activities of Daily Living questionnaire Plaintiff wrote "that she cooks for ½ to 1 ½ hours and cleans for 2 to 4 hours. She does household chores such as washing dishes, sweeping floors and making the bed. [Plaintiff] also grocery shops" (Tr. 23, referencing Tr. 180–83). Plaintiff's argument that the ALJ should not be permitted to reference this 2003 report to discredit testimony given four years later ignores the simple fact that the objective evidence to date does not support any significant functional changes since 2003. (Tr. 23, explaining that Plaintiff suffers from "some limitations," but citing evidence that Plaintiff's HIV has remained stable since July 2003).

The ALJ also focused on Plaintiff's testimony regarding the side-effects of medication (Tr. 24). See 20 C.F.R. § 416.929(c)(3) (noting that in assessing pain, an ALJ considers medication and treatment received). The ALJ explained that Plaintiff's testimony on this topic was contradictory. Specifically, the ALJ noted that Plaintiff "initially testified that she experiences weight gain and was sick to her stomach, but noted that she feels better after the medications get into her stomach.

10

However, she also testified that the medications now 'make her sick all day long.' Plaintiff stated that she vomits almost daily, all day." Id. The negative inference the ALJ drew from this inconsistency is permissible as "one strong indication of credibility of an individual's statements is their consistency, both internally and with other information in the case record." SSR 96-7p.

The ALJ discussed Plaintiff's testimony regarding numbness in her hands (Tr. 24). The ALJ did not credit this testimony because there is no objective evidence in the record that she complained of this problem to her treating physicians or sought treatment for this problem. Id. Moreover, the ALJ explained that the evidence contradicted this testimony, noting that Plaintiff did not complain of any hand problems during consultative evaluations. These evaluations showed full strength of the upper extremities and intact gross sensation, and there was no evidence of sensory deficits (Tr. 24, citing Tr. 260-61, 364).

The ALJ also considered Plaintiff's testimony regarding joint pain (Tr. 24-25). The Fourth Circuit recognizes that "[p]ain is not disabling *per se*," Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir.1986), and that "disability requires more than mere inability to work without pain." Ferrante v. Bowen, 869 F.2d 593, 1989 WL 14408 at *4 (4th Cir. Feb. 7, 1989) (quoting Dumas v. Schweiker, 712 F.2d 1545, 1552 (2nd Cir. 1983)). The ALJ agreed that Plaintiff suffers from some pain and limitation, but found rather that this pain and limitation are not as severe as Plaintiff alleges. Again, the ALJ cites to a variety of evidence that contradicted Plaintiff's allegations of disabling functional limitations due to joint pain. The evidence cited documented normal joint strength and reflexes with full range of motion of all joints (Tr. 24, citing Tr. 338); full active and passive movement of all joints, normal gait, an ability to move about a room without difficulty, an ability to stand on heels and toes without difficulty, intact dexterity and sensation, strength and grip (Tr. 25, citing Tr. 260-

61); normal range of motion in her extremities, no evidence of edema, and no motor or sensory deficits (Tr. 25, citing Tr. 364); and the ability to sit, stand, reach and bend satisfactorily (Tr. 25, citing Tr. 539).

The ALJ also properly weighed Plaintiff's testimony regarding her mental impairments. The mere fact that Plaintiff takes medication to treat her mental impairment does not establish that the impairment is disabling. In fact, Plaintiff testified that the medication calms her (Tr. 47). Although Plaintiff argues that the ALJ erred in stating that she has never received psychotherapy, the record shows that in fact Plaintiff has never received therapy for her mental impairments. "An unexplained inconsistency between the claimant's characterization of the severity of her condition and the treatment she sought to alleviate that condition is highly probative of the claimant's credibility." Mickles, 29 F.3d at 930. Plaintiff explained that her desire to avoid people contributed to her failure to seek treatment, but as Defendant argues, it is reasonable to infer that an individual alleging a disabling impairment would seek treatment for the same. Mickles, 29 F.3d at 921 ("[t]he only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life") (citing Hunter v. Sullivan, 993 F.2d 31 (4th Cir. 1992) (claimant's failure to fill prescription for painkiller, which itself was indicated for only mild pain, and failure to follow medical and physical therapy regimen, supported ALJ's inference that claimant's pain was not as severe as he asserted)).

The ALJ properly found that Plaintiff's subjective complaints were not fully credible to the extent that she indicated her symptoms resulted in functional limitations that were disabling.

Finally, Plaintiff asserts that the ALJ erred when he did not question the V.E. as to whether there was any conflict between his testimony and the DOT concerning the functional requirements

12

of the jobs he testified that Plaintiff could perform. Social Security Ruling 00-4p sets forth standards for the use of vocational experts. The Ruling contains specific provisions regarding conflicts as follows:

> Occupational evidence provided by a vocational expert or VS generally should be consistent with the occupational information supplied by the *DOT*. When there is an <u>apparent unresolved conflict</u> between vocational expert or VS evidence and the *DOT*, the adjudicator must elicit a reasonable explanation for the conflict before relying on the vocational expert or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

Social Security Ruling 00-4p, *4-5 (emphasis added). The Ruling continues:

> **The Responsibility To Ask About Conflicts**
> When a vocational expert or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that vocational expert or VS evidence and information provided in the *DOT*. In these situations, the adjudicator will:
>
> Ask the vocational expert or VS if the evidence he or she has provided conflicts with information provided in the *DOT*; and
>
> If the vocational expert's or VS's evidence appears to conflict with the *DOT*, the adjudicator will obtain a reasonable explanation for the apparent conflict.
>
> **Explaining the Resolution**
> When vocational evidence provided by a vocational expert or VS is not consistent with information in the *DOT*, the adjudicator must resolve this conflict before relying on the vocational expert or VS evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

Social Security Ruling 00-4p, *8-9.

In her brief, Plaintiff asserts the existence of several conflicts between the V.E.'s testimony about jobs she could perform and the descriptions of those jobs in the <u>DOT</u>. Plaintiff accuses

Defendant of offering post hoc justifications for the ALJ's failure to address these alleged conflicts. An analysis of the ALJ's decision and the record shows to the contrary that at least as to the Photocopying Machine Operator and Ticket Taker jobs, it is Plaintiff who has engaged in a post hoc comparison of the record and the DOT in an attempt to create conflicts that were not apparent at the time of the ALJ's decision. Indeed, during the hearing Plaintiff did not argue the existence of apparent conflicts between the V.E.'s testimony and the DOT as to any of the jobs identified by the V.E. (Tr. 60-61). As the Tenth Circuit Court of Appeals has held:

> [t]o the extent that there is any implied or indirect conflict between the vocational expert's testimony and the DOT in this case, ... the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so .... [A]ll kinds of implicit conflicts are possible and the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation. Moreover, claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing. Adopting a middle ground approach, in which neither the DOT nor the vocational expert testimony is per se controlling, permits a more straightforward approach to the pertinent issue, which is whether there is substantial evidence supporting the Commissioner's determination that this particular person can do this particular job or group of jobs.

Gibbons v. Barnhart, 85 Fed.Appx. 88 (10th Cir. 2003) (emphasis added) (quoting Carey v. Apfel, 230 F.3d 131, 146-47 (5th Cir. 2000). See also Ketelboeter v. Astrue, 550 F.3d 620, 625 (7th Cir. 2008) (where "[t]he ALJ erred by failing to ask the vocational expert if his testimony conflicted with the DOT. . . his error is harmless . . . [because] the DOT's descriptions of the jobs that the vocational expert discussed do not conflict with the hypothetical limitations given by the ALJ."); Renfrow v. Astrue, 496 F.3d 918, 921 (8th Cir. 2007) ("[T]he ALJ's error in failing to ask the vocational expert about possible conflicts between his testimony and the *Dictionary of*

*Occupational Titles* was harmless, since no such conflict appears to exist."); Adams v. Astrue, 2007 WL 4358344, *5 (W.D.Va., Dec. 12, 2007) (finding remand for failure to apply SSR 00-4p inappropriate when little to no conflict existed between the DOT and most of the jobs identified by the DOT).

Moreover, as discussed above, the V.E. identified three jobs Plaintiff could perform, with 620 positions or more of each job available in North Carolina and at least "several thousand" nationally (Tr. 60).[5] The Fourth Circuit Court of Appeals has held that as few as 110 in-state jobs available constitutes a significant number of jobs a plaintiff can perform and is sufficient to meet the Commissioner's burden at step five. Hicks v. Califano, 600 F.2d 1048, 1051 n. 2 (4th Cir. 1979), Hyatt v. Apfel, 153 F.3d 720, 1998 WL 480722 at *3 (4th Cir. Aug. 6, 1998) (rejecting argument that 650 jobs statewide were not a significant number because, "We previously have found [in Hicks] that as few as 110 jobs constitute a significant number"). Accordingly, so long as there as there is no conflict between the V.E.'s testimony and the DOT as to one of those jobs, Defendant has met his burden.

The V.E. testified that Plaintiff's age, education, work history and assessed RFC would permit work as a Ticket Taker (DOT 344.667-010) (Tr. 60). Plaintiff initially contends that this occupation's requirements exceed Plaintiff's assessed RFC because as defined in the DOT, the occupation "imposes a temperament requirement of dealing with people, including refusing to admit undesirable patrons, such as those who are intoxicated." This argument, however, fails to identify any significant <u>unexplained</u> conflict. The V.E. resolved this conflict by explaining that the job "is

---

[5]The undersigned notes that Defendant's brief is silent as to the alleged conflicts concerning the Packaging and Filling Machine Operator (DOT 920.685-078). Accordingly, the Court has not considered that job in evaluating Plaintiff's appeal.

15

found in a variety of amusement and recreation settings such as museums [and] could be done under that hypothetical with the very limited interaction with folks" (Tr. 60).

Second, Plaintiff suggests that per the DOT, a ticket taker may also have to count and record the number of tickets collected and alleges that this conflicts with her assessed limitation from jobs involving numbers. However, the ALJ limited Plaintiff's work with numbers in the context of "ruling out factory assembly lines and work situations where speed, numbers, or factory noise[,]for instance[,] is a problem" (Tr. 59). Moreover, the DOT explains that this job only requires level 1 math skills (i.e.: the ability to add and subtract two-digit numbers) and a low degree of numerical aptitude. DOT 344.667-010, 1991 WL 672863.

The V.E. also testified that Plaintiff's age, education, work history and assessed RFC would permit work as a Photocopying Machine Operator –DOT 207.685-014 (Tr. 60). First, Plaintiff suggests that this testimony conflicts with the DOT because the job involves moderate exposure to noise and the ALJ's hypothetical to the V.E. placed a limitation on her exposure to noise. Similar to her argument, rejected above, concerning numbers, Plaintiff again attempts to create a conflict by failing to present the allegedly conflicting limitation in its proper context. The ALJ's discussion of noise was in the context of "ruling out factory assembly lines and work situations where speed, numbers, or factory noise[,]for instance[,] is a problem" (Tr. 59). Here, the DOT does not suggest that this job requires exposure to noise commensurate with factory or assembly line work.

Plaintiff also suggests that because a photocopying machine operator must insert the original document, enter the number of copies, and hit the "start" button, this conflicts with her assessed limitation from jobs involving numbers. This alleged conflict is no more meritorious than the one she alleged concerning the ticket taker job. And like that job, the photocopying machine operator

job only requires level 1 math skills (i.e.: the ability to add and subtract two-digit numbers) and a low degree of numerical aptitude. DOT 207.685-014, 1991 WL 671745.

Finally, Plaintiff alleges that the DOT indicates that a Photocopying Machine Operator may need to clean and repair the machine, "which would involve dust, fumes, and chemicals." As Defendant argues, there is simply no support in the DOT for Plaintiff's inference. While the DOT indicates that the operator "may clean and repair the machine" it also notes that this occupation involves no exposure to toxic chemicals or other environmental conditions. DOT 207.685-014, 1991 WL 671745. For these reasons, Plaintiff's final assignment of error must be overruled as well.

Although the medical records establish that the Plaintiff experienced pain and mental and emotional difficulties to some extent, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist, 538 F.2d at 1056-57.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles, 29 F.3d at 923, citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the record and the hearing testimony, and his ultimate determination that the Plaintiff was not disabled.

## IV. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Summary Judgment" (document #10) be **DENIED;** that Defendant's

"Motion for Judgment on the Pleadings" (document #14) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED.**

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within ten (10) days after service of same. Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989); United States v. Rice, 741 F. Supp. 101, 102 (W.D.N.C. 1990). Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder, 889 F.2d at 1365. Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Wells, 109 F.3d at 201; Page, 337 F.3d at 416 n.3; Thomas v. Arn, 474 U.S. 140, 147 (1985); Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Robert J. Conrad, Jr.

**SO RECOMMENDED AND ORDERED**.

Signed: October 23, 2009

David S. Cayer
United States Magistrate Judge